DEILY & GLASTETTER, LLP
8 Thurlow Terrace
Albany, New York  12203
(518) 436-0344
Jason A. Little, Esq. (JL7573)

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

---

In Re:

JULIAN SALIM,

      Debtor.

Case No. 13-42974 (ess)
(Chapter 7)

---

VW CREDIT, INC.

       Plaintiff,

v.

JULIAN SALIM

      Defendant.

Adv. Proc. No. 13-01442 (ess)

---

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF, VW CREDIT, INC.'S
MOTION FOR SUMMARY JUDGMENT UNDER FED. R. CIV. P. 56 (MADE
APPLICABLE BY FED. R. BANKR. P. 7056) AND LOCAL RULE 7056.1 FOR AN
ORDER DETERMINING THE ENTIRE DEBT OF PLAINTIFF, JULIAN SALIM, TO
VW CREDIT INC. TO BE NON-DISCHARGEABLE UNDER 11 U.S.C. §§ 523(a)(4) & (6)**

**DEILY & GLASTETTER, LLP**

Jason A. Little, Esq.
Jonathan D. Deily, Esq.
*Attorneys for VW Credit, Inc.*
8 Thurlow Terrace
Albany, New York 12203
Phone:  (518) 436-0344
Email:  jlittle@deilylawfirm.com
    jdeily@deilylawfirm.com

1859115

## PRELIMINARY STATEMENT

Plaintiff, VW Credit, Inc. ("VCI"), respectfully submits this Memorandum of Law in support of its motion for summary judgment against Defendant, Julian Salim ("Defendant'), for a determination that Salim's debt to VCI is non-dischargeable. The non-dischargeability is based upon the Defendant's defalcation while acting as a fiduciary of VCI, embezzlement, and willful and malicious injury to VCI all under 11 U.S.C. §§ 523(a)(4) and (6).

At all times relevant, Defendant was the managing member of Big Apple Volkswagen LLC ("Big Apple"), an automobile dealership in Bronx, New York for which VCI provided wholesale floorplan and other financing pursuant to various agreements entered into between the parties. Defendant guaranteed the debt obligations of Big Apple to VCI. In March 2011, VCI conducted an audit of Big Apple's inventory and discovered that Big Apple had sold seventy-eight (78) automobiles out-of-trust, without remitting payment to VCI in the amount of $1,237,615.86 as required under the terms of Big Apple's loan agreements with VCI.

During this same period – i.e., during the very same period that VCI's audit team was attempting to determine the status and whereabouts of its collateral – Salim transferred significant sums of money in the aggregate virtually identical to the converted proceeds to his mother in the United States and to his brother-in-law in Syria, in transfers totaling $1,220,090.07. Defendant accomplished the transfers by utilizing a previously dormant, zero-balance Big Apple "slush" account [1] as a conduit for moving the money out of Big Apple's "funding" account and into the hands of his family members.

---

[1] The term "slush account" is reference to Big Apple's Wachovia Commercial Checking – Wholesale account specifically identified as Big Apple Volkswagen, LLC Slush Account. See Little Decl. at Exhibit 23 [Exhibit K].

Notwithstanding Defendant's claim that he used this money for "legitimate" business transactions, i.e. to repay a personal loan purportedly made to him by his mother, and to purchase used cars in Syria, there is no dispute that VCI had a perfected, first-priority lien over, among other things, Big Apple's inventory and all proceeds from sale of that inventory. There is no dispute that at no time did VCI give Big Apple or Defendant permission to use VCI's cash collateral.

On March 21, 2011, VCI filed suit in the U.S. District Court for the Southern District of New York against Big Apple and Salim, personally, in light of the breaches of the respective obligations as primary obligor and guarantor.

On March 30, 2011, barely two weeks after Defendant admittedly pulled money out of Big Apple's accounts, Big Apple, by the Defendant, as its managing member, filed a voluntary Chapter 11 bankruptcy petition in the U.S. Bankruptcy Court for the Southern District of New York. This case was subsequently converted to a Chapter 7 and is still pending.

On March 14, 2012, the United States District Court for the Southern District of New York entered summary judgment on liability in favor of VCI against Defendant personally for liability to VCI for breach of the terms of Defendant's guaranty. Of particular importance, the March 12, 2012 Decision found that Big Apple, through the Defendant, sold seventy-eight vehicles out-of-trust. On November 29, 2012, the United States District Court for the Southern District of New York entered summary judgment on damages in favor of VCI and against Defendant personally for liability to VCI in the amount of $1,146,758.11.

In light of Defendant's uncontroverted conversion of over $1.2 million of VCI's cash collateral to benefit his family members VCI respectfully submits that Defendant's liability to

VCI, in the amount of $1,146,758.11 is non-dischargeable, pursuant to 11 U.S.C. § 523(a)(4) and 11 U.S.C. § 523(a)(6).

## STATEMENT OF FACTS

The facts entitling VCI to a non-dischargeable judgment against Defendant are fully set forth in its Local Rule 7056-1 Statement of Undisputed Material Facts, the Affidavit of Crystal-Jeffrey Alexander, sworn to on June 10, 2014, and all of the exhibits submitted in support of this motion. Those facts will not be duplicated here, but are incorporated by reference.

## PROCEDURAL HISTORY

VCI initially filed suit against Defendant, Big Apple, and Defendant's former business partners in the U.S. District Court for the Southern District of New York on March 22, 2011, culminating in entry of summary judgment in favor of VCI and against Defendant in the amount of $1,146,758.11 on November 29, 2012.

Defendant voluntarily commenced the instant Chapter 7 proceeding on May 15, 2013.

VCI commenced this Adversary Proceeding on August 20, 2013 (Adv. Doc. No. 1). Defendant and Mr. Salim's attorney of record were served with the Summons and Complaint on August 23, 2013 (Adv. Doc. No. 4).

Defendant filed an Answer with Counterclaims on September 5, 2013 (Adv. Doc. No. 5) and then an Amended Answer with Counterclaims on September 11, 2013 (Adv. Doc. No. 6).

VCI filed an Answer to Counterclaims on October 2, 2013 (Adv. Doc. No. 9), whereupon Defendant filed a Second Amended Answer (without counterclaims) on October 17, 2013 (Adv. Doc. No. 11).

The discovery deadline in this matter expired on March 10, 2014 (Adv. Doc. No. 14). Pursuant to the Court's most recent scheduling order, the deadline for dispositive motions is June 11, 2014. Accordingly, this motion is timely brought.

## ARGUMENT

### A. APPLICABLE LEGAL STANDARDS FOR SUMMARY JUDGEMENT MOTIONS

Pursuant to Fed. R. Civ. Proc. 56, made applicable to these proceedings by Fed. R. Bankr. Proc. 7056, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if a dispute over such fact "might affect the outcome of the suit under the governing law" and would preclude the entry of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

When no genuine triable issues of material fact exist, the moving party is entitled to judgment as a matter of law. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986) (finding that entry of summary judgment is mandated against a nonmoving party who "failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof").

In order to defeat a motion for summary judgment, "[t]he mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." Anderson v. Liberty Lobby, Inc., 477 U.S. at 252. Instead, the nonmoving party must "come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

Although a court must "resolve ambiguities and draw reasonable inferences against the moving party," the nonmoving party may not rely upon "mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." <u>Knight v. U.S. Fire Ins. Co.</u>, 804 F.2d 9, 11 (2d Cir. 1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial'" and summary judgment should be entered. <u>Matsushita</u>, 475 U.S. at 587 (citing <u>First Nat'l Bank of Arizona v. Cities Serv. Co.</u>, 391 U.S. 253, 289 (1968)).

**B. DEFENDANT IS COLLATERALLY ESTOPPED FROM RE-LITIGATING ISSUES DETERMINED IN THE DECISIONS OF THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK IN RELATED LITIGATION CAPTIONED <u>VW CREDIT, INC. V. JULIAN SALIM, et al.</u>, NO. 11-CV-01950**

Initially, Defendant is barred by the doctrine of collateral estoppel from re-litigating issues already determined by the United States District Court for the Southern District of New York, by Judge Paul A. Engelmayer. To establish whether collateral estoppel applies to a prior court's findings, courts apply a four part test as follows: (1) the issue sought to be precluded must be identical to that involved in the prior action; (2) the issue must be actually litigated and actually decided; (3) there must have been a full and fair opportunity for litigation in the prior proceeding; and (4) the issue previously decided must have been necessary to support a valid and final judgment on the merits. See <u>Gelb v. Royal Globe Ins. Co.</u>, 798 F.2d 38, 44 (2d Cir. 1986), <u>cert. denied</u>, 480 U.S. 948 (1987).

On March 14, 2012 and November 29, 2011 the United States District Court for the Southern District of New York, by the Hon. Paul A. Engelmayer, entered Opinions and Orders (including findings of fact) in favor of VCI against, in part, Defendant in the case captioned <u>VW Credit, Inc. v. Julian Salim, et al.</u>, No. 11-cv-01950. The referenced action included a cause of

action against Defendant for breach of his guaranty of Big Apple's debt to VCI. The findings of

fact from the March 14, 2012 Opinion and Order included:

(1)    Big Apple sold 78 vehicles from its inventory, but did not
       remit payment, as required under the Wholesale Loan
       Agreement, to VCI, in the amount of $1,237,615.86;

(2)    On July 1, 2011 Defendant filed an answer; and

(3)    Defendant did not oppose or otherwise respond to VCI's
       motion for summary judgment as to liability;

See Declaration of Jason Little ("Little Decl.") at **Exhibit 10**, pp. 1-3.

The United States District Court's November 29, 2012 Opinion and Order granted VCI

damages in the amount of $1,146,758.11 and made factual findings similar to those contained in

the March 14, 2012 Opinion and Order except that Defendant, through his counsel, actually

opposed the latter motion.   See Little Decl. at **Exhibit 11**, pp. 1-3.

For the purposes of VCI's instant motion the factual findings and conclusions of the

referenced Opinions and Orders satisfy the four-part test outlined in Gelb.  Defendant and Big

Apple's breach of the parties' agreements, the sale of seventy-eight (78) vehicles out-of-trust and

Defendant's liability for the amounts set forth in the November 29, 2012 Opinion and Order are

conclusive as to those issues and are identical to a portion of the issues here as it relates to

establishing the breach of the parties' agreements and the sale of vehicles out-of-trust.

Moreover, those issues have been actually litigated and decided.   The United States District

Court for the Southern District of New York provided a full and fair opportunity for litigation in

the prior proceeding of those issues, and the related factual issues regarding vehicle sales out-of-

trust and breach of the parties' agreements as were necessary to support a valid and final

judgment on the merits.  Thus, Defendant is precluded from re-litigating the issues (factual and

legal) determined in the Opinions and Orders of the United States District Court for the Southern District of New York.

**C.    VCI IS ENTITLED TO A NON-DISCHARGEABLE JUDGMENT OF THE ENTIRE $1,146,758.11 AWARDED BY UNITED STATES DISTRICT COURT JUDGMENT**

The November 29, 2012 Opinion and Order of the United States District Court for the Southern District of New York awarded VCI judgment against, in part, Defendant in the total amount of $1,146,758.11. See Little Decl. [Exhibit 11, p. 10]. The judgment amount accounts for: (1) the principal amount owed to VCI by Defendant under the Wholesale Loan Agreement in the amount of $514,835.20 (after deductions for credits and cash collateral carve-outs paid to Big Apple's bankruptcy trustee; (2) interest on the principal amount under the Wholesale Loan Agreement in the amount of $59,476.29 (as of April 23, 2012); (3) the principal amount owed to VCI by Defendant under the Capital Loan Agreement in the amount of $54,166.98; (4) interest on the principal amount under the Capital Loan Agreement in the amount of $2,245.24 (as of April 23, 2012); (5) attorneys' fees and expenses in the amount of $349,204.65 [2]; and (6) private security expenses in the amount of $50,578.10 and management expenses in the amount of $116,242.65. See Little Decl. [Exhibit 11 p. 5].

VCI is entitled to a non-dischargeable judgment on the principal and interest amounts due from Defendant under the Wholesale Loan Agreement and Capital Loan Agreement (as detailed below) in the amount totaling $630,723.71. VCI also respectfully submits that it is entitled to a non-dischargeable judgment of the $349,204.65 in attorneys' fees, $50,578.10 in private security

---

[2] The award of attorneys' fees and costs by the United States District Court for the Southern District of New York in its Opinion and Order of November 29, 2012 does not include any attorneys' fees or connected to Defendant's bankruptcy filed on May 15, 2013 or this adversary proceeding, for which VCI is not seeking a non-dischargeable judgment.

expenses, and $116,242.65 in management expenses under the Supreme Court's decision in

Cohen v. De La Cruz, 523 U.S. 213 (1998).

> In Cohen, the Supreme Court held, in the context of Section 523(a)(2)(A), that:

> . . . the text of § 523(a)(2)(A), the meaning of parallel provisions in the statute, the historical pedigree of the fraud exception, and the general policy underlying the exceptions to discharge all support our conclusion that "any debt . . . for money, property, services, or . . . credit, to the extent obtained by" fraud encompasses any liability arising from money, property, etc., that is fraudulently obtained, including treble damages, attorney's fees, and other relief that may exceed the value obtained by the debtor.

Id. at 223.

Cohen has been extended by subsequent decisions to include a non-dischargeable judgment in the context of 11 U.S.C. §§ 523(a)(4) and (6). See Adamo v. Scheller, 265 B.R. 39 (Bankr. S.D.N.Y. 2001) (opining that Cohen "'. . . stands for the proposition that where attorneys' fees are available outside of bankruptcy as a matter of law, then they are available inside bankruptcy in a dischargeability proceeding as well'" (quoting Buffalo GYN Womenservices, Inc. v. Behn (In re Behn), 245 B.R. 444, 447 (Bankr. W.D.N.Y. 2000)); Kolver v. Kolver, 249 B.R. 238 (Bankr. S.D.N.Y. 2000) (holding that the reasoning in Cohen applies to attorneys' fees incurred as a result of conduct giving rise to a non-dischargeable debt under Section 523(a)(6)); Baker v. Baker, 2014 WL 948656 (Bankr. D.N.M. March 11, 2014) (finding that "[a]lthough Cohen dealt with nondischargeable debt under § 523(a)(2)(A), its holding likely applies to nondischargeable embezzlement debts as well") (citing In re Musgrave, 2011 WL 312883 (10thd Cir. BAP 2011) (unpublished)).

Cohen is equally applicable here. VCI is entitled to a non-dischargeable judgment in the total amount of $1,146,758.11. See Little Decl. [Exhibit 11, p. 10].

**D.    THE DEBT OWED BY DEFENDANT TO VCI IS NON-DISCHARGEABLE PURSUANT TO 11 U.S.C. § 523(a)(6)**

Section 523(a)(6) provides for the non-discharge of debt resulting from a "willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6). Legislative intent indicates that the word "willful" means "deliberate or intentional," referring to a deliberate and intentional act that leads to injury. H.R. Rep. No. 595, 95th Cong., 1st Sess. 365 (1977); S. Rep. No. 989, 95th Cong., 2nd Sess. 77-79 (1978). "The injury caused by the debtor must also be malicious, meaning wrongful and without just cause or excuse, even in the absence of personal hatred, spite, or ill-will." In re Tongetti, 2007 WL 1080147 *8 (Bankr. S.D.N.Y. April 7, 2007) (internal quotation omitted) (citing In re Stelluti, 94 F.3d 84, 87 (2d Cir. 1996)). A debtor's malice may be implied by her acts and conduct in the context of her surrounding circumstance. In re: Tognetti, 2007 WL 1080147, *8. "Maliciousness will be found where the debtor has breached a duty to the plaintiff found in the contract, statute or tort law, willfully in the sense of acting with deliberate intent, in circumstances where it is evident that the conduct will cause injury to the plaintiff and under some aggravating circumstance to warrant the denial of discharge." Id. (citing In re: Hambley, 329 B.R. 382, 402 (Bankr. E.D.N.Y. 2005)).[3]

Whether circumstances are sufficiently aggravated to support a finding of malice is a fact specific determination made on a case by case basis. In re Khafaga, 419 B.R. 539, 551 (Bankr. E.D.N.Y. 2009). A creditor's must establish a § 523(a) dischargeability exception by a preponderance of the evidence. Grogan V. Garner, 498 U.S. 279, 286 (1991).

The first element in a cause of action under 11 U.S.C. §523(a)(6) is that the injury must be willful on the part of the Defendant. Hambley (In re: Hambley), 329 B.R. 382, 402 (Bankr.

---

[3] Notably in Tognetti, the Southern District of New York discharged debtor's debt because it determined that circumstances were beyond the debtor's control, rather than willful and malicious motive. This case is distinguishable from the case at bar because unlike debtor in Tognetti, here Defendant's circumstances were in his control.

E.D.N.Y. 2005).  As the Supreme Court discussed in <u>Kawauhau v. Geiger</u>, 523 U.S. 57 (1998), non-dischargeability requires a deliberate or intentional injury and not a deliberate or intentional act that leads to an injury.  <u>Id.</u> at 61.

Instructive here is <u>Doughty v. Doughty (In re Doughty)</u>, 2011 WL 4368689 (Sept. 15, 2011 Bankr. S.D. Ind.).  There the Court determined: "with respect to collateral conversion cases . . . the 'true injury' in such cases is that 'the creditors collateral was wrongly or improperly disposed of and that the proceeds were used for purposes other than payment of the obligation that the property secured . . . the question to ask is whether the debtor intended to improperly use the creditor's collateral and/or its proceeds for purposes other than the payment of the debt that the property secured.  If so, there is an intentional injury'.  <u>In re: Doughty</u>, 2011 WL 4368689 (Sept. 15, 2011 Bankr. S.D. Ind.) (quoting <u>ABF, Inc. v. Russell</u>, 262 B.R. 449, 454-55 (Bankr. N.D. Ind. 2001) (additional citations omitted).

Also instructive is <u>In re Alessi</u>, 405 B.R. 65 (W.D.N.Y. 2009), where the facts indicate that in addition to failing to pay the debt, the debtor failed "to pay from funds that the debtor had agreed specifically to earmark for that purpose." <u>Id.</u> at 68.  In that case, thorough her deposition testimony, debtor acknowledged that she understood the terms of the agreement and her obligation to pay.  <u>Id.</u>  Thus, the debtor did not simply fail to pay the debt, but deliberately failed to pay from funds that the debtor had agreed specifically to earmark for that purpose.  <u>Id.</u>  The court in Alessi held that the resulting injury was deliberate and intentional because it violated contractual provisions for use of committed funds.  <u>Id.</u>  Similarly, the Wholesale Loan Agreement here contains an agreement by Big Apple to promptly and faithfully pay all sums owing for each vehicle sold or leased by Big Apple and remit to VCI the total amount then outstanding on VCI's advance on each such vehicle sold or leased.  See Alexnander Aff. at ¶ 12

[Exhibit 1]. Big Apple also "... agree[d] to hold in trust for [VCI]" and "forwith remit to [VCI]" any "unpaid and past due Indebtedness hereunder, all proceeds of each remaining Vehicle when received by [Big Apple], or allow [VCI] to make direct collection thereof . . . ." See Alexnander Aff. at ¶ 12 [Exhibit 1 at ¶ 4].

Defendant had a standing relationship with VCI in which he was aware of the various agreements between the parties. Defendant individually, and as managing member of Big Apple, was aware of his fiduciary relationship with VCI in remitting proceeds pursuant to those agreements. Defendant also acknowledged at his deposition in a related proceeding that VCI had a security interest in the vehicle sale proceeds. Big Apple, by Defendant, breached the parties' agreements by selling seventy-eight (78) vehicles from its inventory without remitting payment to VCI in the amount of $1,237,615.86. Defendant transferred an almost identical amount of money ($1,220,090.07) to his mother and brother-in-law in Syria instead of remitting the funds to VCI. The proceeds of vehicle sales were subject to the parties' agreements and VCI held a first -in-right security interest in those sale proceeds. As in <u>Doughty</u>, the proceeds of the out-of-trust sales were used for purposes other than payment to VCI of Big Apple's obligations. As in <u>Alessi</u>, Defendant did not simply fail to pay the debt owing to VCI, but deliberately failed to pay from funds that were agreed to be specifically earmarked for that purpose. The injury suffered by VCI at the hands of Defendant was deliberate and intentional as a matter of law.

The second element which plaintiff must establish is that Defendant caused the injury maliciously. <u>Hanbley</u>, 329 B.R. at 402. This element can be satisfied by either actual or constructive malice. <u>Id.</u> (citing <u>Navistar Financial Corp. v. Stelluti</u>, 94 F. 3d 84 (2d Cir. 1996). "Maliciousness will be found where the 'debtor has breached a duty to the plaintiff founded in contract, statute or court law, willfully in the sense of acting with deliberate intent, in

circumstances where it is evident that conduct will cause injury to the plaintiff and under some aggravating circumstances to warrant the denial of discharge". Id. (citing In re Belfort, 217 B.R. 138, 144 (Bankr. S.D.N.Y. 1998). Also malice "is implied when anyone of reasonable intelligence knows that the act in question is contrary to commonly accepted duties in the ordinary relationships among people, injurious to another." Id. (citing United Orient Bank v. Green, 215 B.R. 916, 928 (S.D.N.Y. 1997)).

In Doughty, the Bankruptcy Court held:

> The Debtor concealed the location of collateral in which Mutual held an interest and then lied under oath about what he did with it. When he did sell collateral in which Mutual held an interest, he failed to first obtain Mutual's consent, and later failed to remit the proceeds to Mutual, in accordance with the security agreement executed in connection with the First, Second and Third Loans. The Debtor was well aware that he was required to obtain Mutual's consent to the sale of any collateral in which it held an interest because he knew to contact Mutual about the sale of the 1989 International tractor, which Mutual agreed to. The Debtor engaged in a pattern of concealment and misrepresentation of the identities of persons to whom the Debtor allegedly transferred the collateral. He lied under oath as to the whereabouts and status of the collateral . . . .These actions undertaken by the Debtor were "willful" in that he intended to improperly use Mutual's collateral and its proceeds for purposes other than the payment of the debt owed to Mutual. These actions were "malicious" in that they were taken with conscious disregard of the Debtor's duties with respect to the property interest of Mutual, without just cause or excuse."

Id. at *5.

Here, Defendant's transfer of $1,220,090.07 to his mother and brother-in-law in Syria was "malicious" in that the transfers were made with conscious disregard of Big Apple's (and Defendant's) duties to VCI under the parties' agreements. The provisions of the agreements clearly set forth that Big Apple, was required to pay Big Apple's debt obligations for floor plan financing for each of the vehicles sold. Defendant, as Big Apple's managing member, was

aware of Big Apple's obligations under the parties' agreements and consciously disregarded those obligations and converted VCI's funds for his own benefit or the benefit of others, not VCI. Thus, Defendant's conversion of $1,220,090.07 was "malicious" as a matter of law.

### E.    THE DEBT OWED BY DEFENDANT TO VCI IS NON-DISCHARGEABLE PURSNAT TO 11 U.S.C. § 523(a)(4)

As applicable to this case, a discharge under 11 U.S.C. § 727 does not discharge individuals from debt for "fraud or defalcation while acting in a fiduciary capacity, embezzlement or larceny." 11 U.S.C. § 523(a)(4). Defendant's actions in converting $1,220,090.07 of VCI's funds constitutes both defalcation while acting in a fiduciary capacity and embezzlement.

### (1)    Defendant Acted in a Fiduciary Capacity to VCI

To establish a claim for non-dischargeable defalcation under 11 U.S.C. § 523(a)(4), VCI must first establish that Defendant acted while in a fiduciary capacity. Zohlman v. Zoldan, 226 B.R. 767, 772 (S.D.N.Y. 1998) (citing Barristers Abstract Corp. v. Caufield (In re Caulfield), 192 B.R. 808, 818 (Bankr. E.D.N.Y. 1996); DeRosa v. Jacone (In re Jacone), 156 B.R. 740 (Bankr. S.D.N.Y. 1993)). As the court succinctly stated in Zohlman, "Section 523(a)(4) applies only to express or technical trusts. Constructive or implied trusts, or any trust where the existence of the trust is created merely on the basis of wrongful conduct (a trust ex maleficio) do not create a fiduciary relationship. Id. at 772-73 (citing OnBank & Trust Co. v. Siddell (In re Siddell), 191 B.R. 544 (N.D.N.Y. 1996); Peerless Ins. Co. v. Casey (In re Casey), 181 B.R. 763, 766 (S.D.N.Y. 1995); Schwalbe v. Gans (In re Gans), 75 B.R. 474, 489 (Bankr. S.D.N.Y. 1987)).

While federal law dictates that for the purposes of 11 U.S.C. § 523(a)(4) that the trust relationship must be express or technical, it is state law, including state common law, that

determines when a trust in the strict sense exists. Id. at 773 (citing Ragsdale v. Haller, 780 F.2d 794 (9th Cir. 1986)).

As the New York Court of Appeals stated in EBC  I, Inc. v. Goldman Sachs & Co., 5 N.Y.3d 11 (2005):

> A fiduciary relationship exists between two persons when one of them is under a duty to act for or to give advice for the benefit of another upon matters within the scope of the relation.  Such a relationship, necessarily fact-specific, is grounded in a higher level of trust than normally present in the marketplace between those involved in arm's length business transactions.  Generally, where parties have entered into a contract, courts look to that agreement to discover . . . the nexus of [the parties'] relationship and the particular contractual expression establishing the parties' interdependency.  If the parties . . . do not create their own relationship of higher trust, courts should not ordinarily transport them to the higher realm of relationship and fashion the stricter duty for them.  However, it is fundamental that fiduciary "liability" is not dependent solely upon an agreement or contractual relation between the fiduciary and the beneficiary but results from the relation.

Id. at 19-20 (internal citations and quotations omitted).

The contractual agreements between the parties' specifically require that all sums for each vehicle sold or leased by Big Apple would be promptly and faithfully paid to VCI.  The agreements also specifically provide that the proceeds will be held "in trust" for VCI.  See Alexander Aff. at ¶ 12 [Exhibit 1 at ¶ 4].  As a matter of New York law, the parties here entered into agreements which established a fiduciary relationship within the strict confines of 11 U.S.C. § 523(a)(4).  The agreements clearly identify VCI as the beneficiary, Big Apple as the fiduciary, the vehicle sale proceeds as the res and delivery by VCI to Big Apple of the res.  See In re Marcus Trusts, 2 A.D.3d 640 (2d Dept. 2003).

**(2)    Defendant's Misappropriation of $1,220,090.07 Constitutes Defalcation as a Matter of Law**

As stated by the Second Circuit in <u>Hyman v. Hyman</u>, 502 F.3d 61 (2d Cir. 2007), "defalcation under § 523(a)(4) requires a showing of conscious misbehavior or extreme recklessness – a showing akin to the showing required for scienter in the securities law context." <u>Id.</u> at 68 (citing <u>Ganino v. Citizens Utils. Co.</u>, 228 F.3d 154, 168 (2d Cir. 2000); <u>Novak v. Kasaks</u>, 216 F.3d 300, 308 (2d Cir. 2000); <u>Press v. Chemical Inv. Servs. Corp.</u>, 166 F.3d 529, 538 (2d Cir. 1999)).

In adopting this standard, the Second Circuit reasoned:

> By requiring the courts to make appropriate findings of conscious misbehavior or recklessness in the course of dischargeability litigation, the standard we adopt today insures that the harsh sanction of non-dischargeability is reserved for those who exhibit some portion of misconduct. The standard does not reach fiduciaries who may have failed to account for funds or property for which they were responsible only as a consequence of negligence, inadvertence or similar conduct not shown to be sufficiently culpable. This standard, we believe, also has the virtue of ease of application since the courts and litigants have reference to a robust body of securities law examining what these terms mean.

Id. at 68-69 (internal quotation omitted).

In <u>Bullock v. BankChampaign, N.A.</u>, 133 S.Ct. 1754 (2013), the Supreme Court settled the conflict of whether "defalcation" under 11 U.S.C. § 523(a)(4) requires a culpable mental state and agreeing with the Second Circuits decision in <u>Hyman</u>. <u>Id.</u> at 1759-60. In <u>Bullock</u>, the Supreme Court reasoned:

> . . . where the conduct at issue does not involve bad faith, moral turpitude, or other immoral conduct, the term [defalcation] requires an intentional wrong. We include as intentional not only conduct that the fiduciary knows is improper but also reckless conduct of the kind that the criminal law often treats as the equivalent. Thus, we include reckless conduct of the kind set forth in the Model Penal Code. Where actual knowledge of wrongdoing is lacking, we consider conduct as equivalent if the fiduciary consciously disregards (or is willfully blind to) a substantial and unjustifiable

> risk that his conduct will turn out to violate a fiduciary duty . . .
> [t]hat risk must be of such a nature and degree that, considering the
> nature and purpose of the actor's conduct and the circumstances
> known to him, its disregard involves a gross deviation from the
> standard of conduct that a law-abiding person would observe in the
> actor's situation.

Id. at 1759-60 (internal quotations and citations omitted).

Here, there is no doubt that Defendant converted funds of VCI to family members and failed to account for those funds as a result. Moreover, Defendant's transfer of VCI's funds was intentional (or at least reckless). Defendant admitted in his deposition testimony in a related proceeding that he was aware of VCI's security interest. Defendant also admitted that he did not advise VCI of either the transfer to his mother or the transfer to his brother-in-law in Syria. In fact, Defendant testified that he had no obligation to get authorization from VCI for investments and never discussed the transactions at issue with VCI. Defendant's transfer of $1,220,090.07 constitutes defalcation while acting in a fiduciary relationship.

(3)    **Defendant's Misappropriation of $1,220,090.07 Constitutes Embezzlement as a Matter of Law**

Embezzlement is the "'fraudulent appropriation of money by a person to whom such property has been entrusted or into whose hands it has lawfully come.'" Indo-Med Commodities, Inc. v. Wisell, 494 B.R. 23, 40 (Bankr. E.D.N.Y. 2011) (quoting Gore v. Kressner (In re Kressner), 155 B.R. 68, 74 (Bankr. S.D.N.Y. 1993)). Embezzlement applies outside of the fiduciary context – meaning that establishing a fiduciary relationship is not required to establish non-discharge of a debt for embezzlement under 11 U.S.C. § 523(a)(4). See Bullock, 133 S.Ct. at 1760.

A plaintiff seeking non-discharge of a debt for embezzlement under 11 U.S.C. § 523(a)(4) must show: "'(1) the debtor rightfully possessed another's property; (2) the debtor

appropriated the property for use other than the use for which the property was entrusted; and (3) the circumstances implied a fraudulent intent.'" Wisell, 494 B.R. at 40 (quoting In re Guthier, 2010 WL 1443989 at *6 (Bankr. N.D.N.Y. Apr. 9, 2010)).

Here, the first two elements are clearly met. Defendant, as the Managing Member and majority owner of Big Apple, rightly possessed VCI's cash collateral pursuant to the parties' agreements and in practice. Debtor also admittedly appropriated VCI's cash collateral for a use other than for which the cash collateral was entrusted – i.e. by transferring $1,220,090.07 to his mother and brother-in-law in Syria instead of remitting the funds to VCI as required by the parties' agreements.

Similarly, the record provides a sufficient showing that the appropriation by Defendant of VCI's cash collateral implied fraudulent intent. The November 29, 2012 Opinion and Order of the United States District Court for the Southern District of New York found that Big Apple, through Defendant, sold seventy-eight (78) vehicles out of trust in the amount of $1,237,615.86. During the barely nineteen (19) days between the initial visit of VCI's audit team and the filing of Big Apple's voluntary Chapter 7 petition, Defendant, as Big Apple's controlling member, transferred almost all the out-of-trust proceeds out of Big Apple's "funding account" into its previously dormant "slush account," and then from the "slush account" into the hands of Defendant's mother and his brother-in-law. The amounts referenced are approximately 99.2% of the out-of-trust proceeds and used a previously dormant account as a conduit – and did so while denying VCI's audit team access to Big Apple's books and records. These transactions were not authorized by VCI.

The United States Bankruptcy Court for the Southern District of New York has most recently found that the transfers from Defendant to his mother were preferential and subject to avoidance by the trustee in Big Apple's bankruptcy case. See Little Decl. [Exhibit 25].

The transfers by Defendant to his mother and brother-in-law in Syria of nearly identical amounts of money Big Apple owed to VCI for out-of-trust sales immediately after VCI's audit of Big Apple and immediately before Defendant filed Big Apple for bankruptcy protection sufficiently establish Defendant's intent to defraud VCI and entitles VCI to summary judgment under 11 U.S.C. § 523(a)(4).

## CONCLUSION

For all the reasons stated herein, VW Credit, Inc. respectfully requests that the Court grant its motion for summary judgment pursuant to Fed. R. Bankr. P. 7056 against Defendant, Julian Salim, and issue an order and judgment determining the entire judgment debt owed by Defendant, Julian Salim, to Plaintiff, VW Credit, Inc., is non-dischargeable under 11 U.S.C. §§ 523(a)(4) and (6).

Dated: Albany, New York
      June 11, 2014

DEILY & GLASTETTER, LLP

By: _____
Jason A. Little, Esq. (JL7573)
Jonathan D. Deily, Esq. (JD3579)
*Attorneys for VW Credit, Inc.*
8 Thurlow Terrace
Albany, New York 12203
Tel: (518) 436-0344
Email: jlittle@deilylawfirm.com
        jdeily@deilylawfirm.com