UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------X          Case: 13-42974(ess)

In Re:

JULIAN SALIM,

            Debtor.

---------------------------------------------------X

VW CREDIT, INC.

            Plaintiff,          Adv. Proc. No. 13-01442(ess)

v.

JULIAN SALIM

            Defendant.

---------------------------------------------------X


# Memorandum of Law


Phillip Jaffe, Esq.
370 East 76th Street
New York, NY 10021
Tel: (212) 734-3535

George Bassias, Esq.

Table of Contents

STATEMENT O F THE FACTS 1

A.  Pre-Bankruptcy ............................................................................................................... 1

B.  VW Credit, Inc., Action at the District Court Against Big Apple Volkswagen, LLC,
John Koeppel, Gzregorz Samborski and Julian Salim ........................................................ 3

C.  The District Courts decision in VCI's Complaint against Mr. Salim 3

Summary of argument ..................................................................................................... 4

Legal Argument ............................................................................................................... 5

I.  Summary judgment is not proper because Defendant used the money to make the dealership
more profitable and to return the money to his mother who helped Mrs. Salim, Mr. Koeppel Mr.
Samborski purchase the dealership. ............................................................................... 5

A.  Mr. Salim's return of the debt to his mother and payment of money to purchase cars
in Syria are all "material events. .................................................................................. 7

B.  The District Court did no more than to create civil liability against Mr. Salim but at
no time did the Decision use the terms "fraud" or "conversion." ........................................ 8

C.  VCI's case, *Cohen v. De La Cruz*, stands for the proposition that unless the Court
finds fraud the debt is completely dischargeable ............................................................. 10

D.  Mr. Salim's actions were not willful and malicious but can only be characterized as
an owner attempting to save his business by the purchase of cars which he could resell at a
profit and money that was returned to his mother who had lent the three owners, Mr.
Salim, Mr. Koeppel and Mr. Samborski the money to purchase Big Apple. ...................... 10

E.  The Standard for collateral estoppel bars VCI from relitigating the two actions in the
District Court which did not find fraud on the part of Mr. Salim. ................................... 11

II  Summary judgment should be provided to Mr. Salim and the adversary action against him
dismissed because VCI is estopped from its attempt to litigate causes of action that to be proper
should have been made in VCI's earlier TWO litigation's against Mr. Salim. ......................... 11

A.    The Court has the authority, by law to dismiss the Movant, VCI's Summary Judgment motion and *sua sponte* provide Summary Judgment to, Mr. Salim, the Non-Movant. ................................................................................................................. 14

B.    Mr. Salim did not have to bring a cross-motion to have the action against him dismissed because VCI was precluded, by virtue of *res judicata*, from bringing a second action on the same set of facts. ......................................................................... 15

Conclusion .................................................................................................................. 15

## STATEMENT O F THE FACTS

### A. Pre-Bankruptcy

Prior to his bankruptcy, Julian Salim, was a businessman who purchased and sold cars. On or about June 12, 2006, Greg Samborski, John Koeppel and Mr. Salim purchased Big Apple Volkswagen. Respective percentages of ownership were, Mr. Samborski had a twenty-five percent, Mr. Koeppel had forty percent and Mr. Salim had a thirty-five percent ownership of Big Apple Volkswagen. (Salim Affidavit¶ 2)

In 2010 Mr. Samborski and Mr. Salim bought out Mr. Koeppel. (Salim Affidavit¶3)

Mr. Salim's great contribution to the Big Apple was that he had expertise in purchasing cars from all over the world; that is, from Germany, Africa, South America, Israel, and Russia. Pursuant to that he made an agreement with Mr. Rami Osman to purchase cars in Syria. (Salim Affidavit¶6)

In accord with Mr. Salim's responsibility for Big Apple he wired $485,000 to Rami Osman for the purchase of vehicles. Mr. Salim's brother wired an additional $325,000 to his brother Mohammed in Syria so that he could provide the additional funds to Rami Osman.

Mr. Koeppel and Mr. Samborski had always known that Mr. Salim was only able to purchase Big Apple with them because of the money he had borrowed from his mother. (Exhibit B and C.)

In 2009 Mr. Koeppel suggested that Mr. Salim repay the mortgage that he had with his mother. (Salim Affidavit ¶ 8)Mr. Salim, however, wanted to retain the money in the business because he believed that the money could be used prior to paying his mother to build the business even better. As a result he chose not to repay his mother at that time. Mr. Salim was aware that the conditions of the mortgage were that he had until April 1, 2011 to repay his

1

mother.

Mr. Salim's entire purpose at that time was only to create a thriving automobile company. The business was successful at the time there would have been no reason to contemplate Chapter 11.

It was to everyone's surprise that the war broke out in Syria subsequent to providing the money to Osman Rami. Mr. Rami delivered the wired funds to his sources in Syria for the purchase of cars in Dubai. Because the situation was deteriorating, the United Arab Emirates put a hold on all banking transactions in Syria. Mr. Salim, because of the large amount of money involved, personally went to Syria and remained there for two and a half months in an attempt to get his money back. At the time it was very dangerous for Mr. Salim to be in Syria but because of the large amount of money involved and his attempt to obtain his money back he stayed in Syria for those two and one half months. He also learned, according to his Affidavit, that the Muslim brotherhood was contemplating his kidnapping. (Salim Affidavit-¶10.)

VW Credit was alarmed because of Mr. Salim's business transactions in Syria and decided to pull the plug on Mr. Salim and caused Big Apple to eventually have to file for Chapter 11. VW gave Mr. Salim an ultimatum that he had only 30 days to find the bank that would finance his company. Eventually, not being able to get funding, on the advice of his attorney John Gentile, he filed for Chapter 11. (Salim Affidavit-¶12.

Mr. Salim did everything that a responsible businessperson should do in an attempt to avoid bankruptcy. He went to VW in New Jersey in a last-minute appeal, and attempted to sell the business which he had placed large sums of money into and a large amount of time and effort to make Big Apple successful, back to VW. VW rejected Mr. Salim's offer.

**B. VW Credit, Inc., Action at the District Court Against Big Apple Volkswagen, LLC, John Koeppel, Gzregorz Samborski and Julian Salim**

The VW Complaint was for Replevin, Breach of Contract and Breach of Guarantees. (*Please see*, (Exhibit D-Complaint) attached to Affidavit.

VCI's First Cause of Action was for Breach of Contract. Over the next twenty-one paragraphs in the complaint, ¶¶ 21-27, VCI describes why the defendants are liable to it. VCI's Second Cause of Action was for Replevin.    The Second Cause of Action had fourteen paragraphs ¶¶ 28-42.

At no place in VCI's Complaint does allege fraud. This is not consistent with VCI's summary judgment motion which is asking the Court to not discharge Mr. Salim's chapter 7 because he committed fraud, which is the exception to a discharge. In VCI's summary judgment motion they employ the word fraud four times. Likewise, VCI's summary motion states the word "conversion" three times. The words "fraud" and "conversion" are never stated in VCI's Complaint against Mr. Salim.

**C. The District Courts decision in VCI's Complaint against Mr. Salim**

In the Honorable Paul A. Engelmayer's March 14, 2012 Order at no place in the Order does the District Court use the terms "fraud" or "conversion." It is important to note that there was a second action against the same defendants by VCI, November 29, 2012 and that later court likewise never use the terms "fraud" or "conversion." The November 29, 2012 Court did state the following:

> CONCLUSION
> For the foregoing reasons, VCI's motion for summary judgment on liability as to its breach of contract claim (Count One) against defendants

3

Koeppel, Samborski, and Salim is GRANTED, Defendant Koeppel's motion for summary judgment as to his first cross-claim against co-defendants Samborski and Salim is DENIED.

Mr. Salim does not know why, after two Court opinions that never used the terms fraud or conversion, that now VCI is using the term "fraud" to deny him discharge in his bankruptcy.

## SUMMARY OF ARGUMENT

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact.

Plaintiff, VW Credit, Inc. ("VCI"), in its Memorandum of Law for summary judgment provides the basis for this Court to deny VCI's application for summary judgment. In VCI's first paragraph it states the following:

> The non-dischargeability is based upon the Defendant's defalcation while acting as a fiduciary of VCI, embezzlement, and willful and malicious injury to VCI all under 11 U.S.C. §§ 523(a) 4 and (6).

Plaintiff's charges are material in this action. Those charges are the center of VCI's summary judgment motion.

## LEGAL ARGUMENT

I.    SUMMARY JUDGMENT IS NOT PROPER BECAUSE
DEFENDANT USED THE MONEY TO MAKE THE DEALERSHIP
MORE PROFITABLE AND TO RETURN THE MONEY TO HIS
MOTHER WHO HELPED MRS. SALIM, MR. KOPPEL MR.
SAMBORSKI PURCHASE THE DEALERSHIP.

> Only disputes over facts that might affect the outcome of the suit under the
> governing law will properly preclude the entry of summary judgment. . . .
> This materiality inquiry is independent of and separate from the question of
> the incorporation of the evidentiary standard into the summary judgment
> determination. That is, while the materiality determination rests on the
> substantive law, it is the substantive law's identification of which facts are
> critical and which facts are irrelevant that governs. Any proof or evidentiary
> requirements imposed by the substantive law are not germane to this
> inquiry, since materiality is only a criterion for categorizing factual disputes
> in their relation to the legal elements of the claim and not a criterion for
> evaluating the evidentiary underpinnings of those disputes.
>
> &ast;&ast; &ast;
>
> More important for present purposes, summary judgment will not lie
> if the dispute about a material fact is "genuine," that is, if the evidence is
> such that a reasonable jury could return a verdict for the nonmoving party.
> In *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 88
> S.Ct. 1575, 20 L.Ed.2d 569 (1968), we affirmed a grant of summary
> judgment for an antitrust defendant where the issue was whether there was a
> genuine factual dispute as to the existence of a conspiracy. [A]ll that is
> required is that sufficient evidence supporting the claimed factual dispute be
> shown to require a jury or judge to resolve the parties' differing versions of
> the truth at trial." 391 U.S., at 288-289, 88 S. Ct., at 1592.

*Anderson v. Liberty Lobby, Inc*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)

Mr. Salim, acting for the corporation, does not contest that the transfer of money to his

brother, Syria, to purchase of cars, under bankruptcy law, was legally a "fraudulent transfer."

Similarly, Mr. Salim, does not contest that the money given back to his mother was legally a

"fraudulent transfer." The material issue before the Court, however, is the intent of the Salim. In

Mr. Salim's Affidavit he states that he had "done transactions involving overseas several times in

the course of the business. I have sold cars to parties in Germany, Africa, South America, Israel,

and Russia. I have done other business deals with Rami Osman before." (Salim Affidavit-¶5.).

Likewise, Mr. Salim's states that "[t]he additional $335,000 was used to pay off my mother's mortgage. We purchased the dealership with a loan from my mother." (Salim affidavit-¶6.) It is uncontroverted that Mr. Salim, Mr. Samborski and Koeppel could not have purchased Big Apple without the loan from his mother. *Please see*, Agreement with his mother for the loan to purchase Big Apple. (Exhibit B.). *Please also see*, wire from his mother to purchase Big Apple. (Exhibit E.)

Plaintiff, VCI, employs phrases such as, "Notwithstanding Defendant's *claim* that he used this money for "legitimate" business transactions, i.e. to repay a personal loan purportedly made to him by his mother, and to purchase used cars in Syria . ..." While Plaintiff characterizes the actions of Mr. Salim as *claims*, he could do no more than allege it as a *claim* because he has produced no proof (evidence) to this Court that Mr. Salim's actions were anything other than his disputes with Mr. Salim's statements. It should be noted that the dispute between VCI and Mr. Salim is "material" and a question for the trier of fact. Thus, by VCI's own statements made in its Memorandum VCI repeatedly produces factual disputes between VCI and Mr. Salim.

VCI states, "On March 14, 2012, the United States District Court for the Southern District of New York entered summary judgment on liability in favor of VCI against Defendant personally for liability to VCI for breach of the terms of Defendant's guaranty." VCI again notifies the Court that on "November 29,2012, the United States District Court for the Southern District of New York entered summary judgment on damages in favor of VCI and against Defendant personally for liability to VCI in the amount of $1,146,758.11."

Throughout two decisions by the United States District Court for the Southern District Court of New York there are two words that the District Court never used. The court never used

6

the terms frauds or conversion[1] in relation to Mr. Salim's actions to save the dealership by

purchasing cars overseas and for returning the money that Mr. Salim's mother had provided so

that Mr. Salim, Mr. Koeppel and Mr. Samborski could purchase Big Apple. But as previously

stated that each time VCI makes a statement disputing Mr. Salim's intent it creates a material

discrepancy as it relates to summary judgment.

### A. Mr. Salim's return of the debt to his mother and payment of money to purchase cars in Syria are all "material events.

VCI's attempt to color "material events" as "non-material" events is bizarre because

VCI's entire action is based upon VCI's coloring of Mr. Salim's payment to his mother and the

money paid to purchase cars in Syria as being suspicious and questionable. Thereby VCI

establishes that the issues to be decided by the trier of fact are "material."

VCI states that an "entry of summary judgment is mandated against a nonmoving party

who "failed to make a sufficient showing on a¡ essential element of her case with respect to

which she has the burden of proof". (M.4)

But Mr. Salim in his Affidavit clearly presents to the Court that, while his actions under

bankruptcy law may be described as a preference, his purpose was clearly to repay his mother for

the money she had lent him for the purchase of Big Apple and that the additional money that he

used was distinctly for the purchase of cars in Syria. (Salim Affidavit,¶6)  VCI's description of

Mr. Salim's actions as having "[t]he mere existence of a scintilla of evidence in support of the

[nonmoving party's] position will be insufficient; there must be evidence on which the jury could

reasonably find for the [nonmoving party]." *Anderson v. Liberty Lobby,. Inc.*, 477 U.S. al 252.

Mr. Salim in his Affidavit has "come forward with specific facts showing that there is a

---

[1] .    VCI uses the term "conversion" three times in its Memorandum of Law and the term "fraud" four times in its Memorandum of Law.  In the District Court's two decisions that Court never used either term.

genuine issue for trial." *Matsushita Elec. Indus. Co.. Ltd. v.   Zenith Radio Com.,* 475 U.S.

574,587 (1986).

Moreover, VCI's position is inconsistent, if not opposite to the law.

> Fed.R.Civ.P. 56(e)(2). In considering a motion for summary judgment, "it
> remains the well established rule that 'the judge's function is not himself to
> weigh the evidence and determine the truth of the matter but to determine
> whether there is a genuine issue for trial.' " *Moore v. Morton*, No. 91–2603,
> 1992 WL 46292, at \*4 (4th Cir. Apr.2, 1992) (unpublished table decision)
> (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct.
> 2505, 91 L.Ed.2d 202 (1986)). "Further, the issue of material fact required
> by Rule 56(c) to be present to entitle a party to proceed to trial is not
> required to be resolved conclusively in favor of the party asserting its
> existence; rather, all that is required is that sufficient evidence supporting
> the claimed factual dispute be shown to require a jury or judge to resolve
> the parties' differing versions of the truth at trial." Id. (quotations omitted)
> (citing *Anderson*, 477 U.S. at 248–49, 106 S.Ct. 2505).

*In re Rountree*, 448 B.R. 389, 399 (Bankr. E.D.Va., 2011)

VCI in effect is asking the Court to determine the credibility of the statements that Mr.

Salim has made in his Affidavit. VCI has done no more than to undermine the credibility of Mr.

Salim and also seeks to have all VCI's statements viewed as being truthful, and therefore, if the

Court believes VCI's statements as being true, it must be that Mr. Salim's statements are untrue.

That would be no more than placing the Court in the position to be either a judge or jury to

determine the disputed facts.

### B. The District Court did no more than to create civil liability against Mr. Salim but at no time did the Decision use the terms "fraud" or "conversion."

VCI creates a situation, which was never a situation, at the District Court. Then upon

VCI's improvised representation of the facts in this action, then VCI proceeds to provide the

Court with steps based upon VCI's false representations. A logical step in its contrived and

invented scheme states that the Court must then find collateral estoppel against Mr. Salim. (A.5).

March 14, 2012 District Court's decision[2] (p.3) stated the following:

> For the reasons set out below, there is no genuine dispute of material fact as to defendants' breach of the Loan Agreements, and as to defendants' liability to VCI under those Loan Agreements.

Civil liability for debts incurred is the reason why citizens file for bankruptcy. VCI's pointing to Mr. Salim's civil liability for purposes of collateral estoppel does no more than restating that Mr. Salim has incurred a debt -- the reason why Mr. Salim has filed for bankruptcy. VCI at no time states in its papers why some civil liability should be dismissed and other civil liability should be nondischargeable. According to VCI's hypothesis, every fraudulent transfer is a one hundred percent fraud situation.

VCI's heading states that "Defendant is collaterally estopped from re-litigating issues determined in the decisions of the United States District Court." Again, Mr. Salim has no intention of re-litigating the civil liability and that is why he is seeking discharge in bankruptcy. (M.5).

Similarly, (M.6) VCI one more time states that a debt is owed to VCI. VCI then elaborates on what constitutes the debt. Then without any proof of VCI's claim that Mr. Salim was liable for fraud states that it is "entitled to a non-dischargeable judgment on the principal and interest amounts due from Defendant under the Wholesale Loan Agreement and Capital Loan Agreement . . .."

VCI, after being convinced that it has made its fraud claim to the Court's satisfaction,

---

[2] .   It must be questioned that VCI had two opportunities to appeal the District Court's decisions (March 14, 2012 and November 29, 2012 decisions) that at no time found fraud, but chose not to appeal those two decisions. VCI, therefore, has therefore taken a convoluted approach which is asking this Court to find a different result on the same set of facts before it, than District Court found on the action before it at either of the two Court dates. Therefore, the basis of VCI's Memorandum of Law has all the earmarks and the foundation of an appeal. *See,* *("U.S. v. International Broth. Of Teamsters*, 951 F.Supp. 1113 (S.D.N.Y., 1997)"exalts form over substance.""

then adds on to VCI's own "judgment on the case" that according to VCI's own judgment that

the Court must take VCI's own judgment one step further and designate the action as being

nondischargeable. To that end VCI cites *Cohen v. De La Cruz*, 523 U.S. 213, 118 S.Ct. 1212,

140 L.Ed.2d 341 (1998). (M.8)

### C. VCI's case, *Cohen v. De La Cruz*, stands for the proposition that unless the Court finds fraud the debt is completely dischargeable

Cohen, however, was a completely dissimilar situation. In Cohen the landlord over a

period of many years had made fraudulent rent charges against his tenants. In that action,

completely dissimilar to the present action, and after a bench trial, "[t]he court found that

petitioner had committed "actual fraud" within the meaning of 11 U.S.C. §523(a)(2)(A) and that

his conduct amounted to an "unconscionable commercial practice" under the New Jersey

Consumer Fraud Act." In the present action before the Court, and in previous District Court

judgments the District Court never found fraud — only that Mr. Salim was liable for a debt.

### D. Mr. Salim's actions were not willful and malicious but can only be characterized as an owner attempting to save his business by the purchase of cars which he could resell at a profit and money that was returned to his mother who had lent the three owners, Mr. Salim, Mr. Koppel and Mr. Samborski the money to purchase Big Apple.

The District Court's decisions (March 14, 2012 and November 29, 2012 decisions at no

time found fraud on the part of Mr. Salim.

A creditor seeking to establish nondischargeability under § 523(a) must do so by the

preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 291, 111 S.Ct. 654, 112

L.Ed.2d 755 (1991). Parties may invoke collateral estoppel to preclude relitigation of the

elements necessary to meet a § 523(a) exception. Id. at 285 n. 11, 111 S.Ct. 654; *see also, e.g., In*

*re Docteroff*, 133 F.3d 210, 215 (3d Cir. 1997) ("Collateral estoppel is applicable if the facts

established by the previous judgment... meet the requirements of nondischargeability...."). In

neither of the two District Court judgments did the Court conclude that Mr. Salim's actions were

willful or malicious.

Collateral estoppel, however, bars VCI from relitigating issues that were decided by the

District Court. Likewise, *Grogan v. Garner's* preponderance of the evidence mandates that only

<u>after</u> the disputed evidence by the adversaries before the triers of facts may an action be

finalized. Raising the issue of preponderance of evidence equates to "material" disputes may not

be proper for purposes of summary judgment.[3]

> ### E. The Standard for collateral estoppel bars VCI from relitigating the two actions in the District Court which did not find fraud on the part of Mr. Salim.
>
> As indicated, in order for a judgment to be preclusive, the issue in question must have been actually decided, and its determination must have been essential to the judgment. *See, e.g., Tucker v. Arthur Andersen & Co.*, 646 F.2d 721, 728 (2d Cir.1981). If an issue was not actually decided in the prior proceeding, or if its resolution was not necessary to the judgment, its litigation in a subsequent proceeding is not barred by collateral estoppel. *See, e.g., Brown v. Felsen*, 442 U.S. 127, 139 n. 10, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979); *Jim Beam Brands Co. v. Beamish & Crawford Ltd.*, 937 F.2d 729, 734 (2d Cir.1991), cert. denied, 502 U.S. 1094, 112 S.Ct. 1169, 117 L.Ed.2d 415 (1992); *Balderman v. United States Veterans Administration*, 870 F.2d 57, 62 (2d Cir.1989). *The prior decision of the issue need not have been explicit, however, "[i]f by necessary implication it is contained in that which has been explicitly decided.*" *Norris v. Grosvenor Marketing Ltd.*, 803 F.2d 1281, 1285 (2d Cir.1986) (internal quotation marks omitted). If the decision was implicitly necessary, "it will be the basis for collateral estoppel." Id. (internal quotation marks omitted). (*emphasis added in italics*.)

*Postlewaite v. McGraw-Hill*, 333 F.3d 42, 48 (2nd Cir., 2003)

Neither of the two District Court decisions indicated fraud on the part of Mr. Salim. No

fraud judgment was found against Mr. Salim and collateral estoppel precludes VCI's from

relitigating its fraud claim, in this Court, one more time against Mr. Salim.

### II    SUMMARY JUDGMENT SHOULD BE PROVIDED TO MR. SALIM AND THE ADVERSARY ACTION AGAINST HIM

---

[3] .    Mr. Salim used the money to pay back his mother who lent money to him which enabled him to purchase Big Apple and to purchase cars in Syria. Please see, Salim Affidavit. (¶¶5-7.)

**DISMISSED BECAUSE VCI IS ESTOPPED FROM ITS ATTEMPT
TO LITIGATE CAUSES OF ACTION THAT TO BE PROPER
SHOULD HAVE BEEN MADE IN VCI'S EARLIER TWO
LITIGATION'S AGAINST MR. SALIM.**

VCI is attempting to litigate claims against Mr. Salim for fraud that it never stated in the

District Court. It is virtually horn-book law that parties must always litigate all claims that they

believe that they have against each other in their first choice of forum. VCI is attempting before

this Court to have additional claims, which were never brought before the District Court,

litigated for the first time. (Please see VCI's March 21, 2011 Complaint in the District Court in

Mr. Salim's Affidavit.)

"Claim preclusion bars the relitigation . . . of claims that were, or could have been, brought

in an earlier litigation between the same parties or their privies." *Bank of N.Y. v. First

Millennium, Inc., 607 F.3d 905, 919 (2d Cir. 2010)." Burberry Ltd. v. Horowitz (2nd Cir., 2013).*

*See also, Cieszkowska v. Gray Line N.Y.,* 295 F.3d 204, 206 (2d Cir. 2002) ("[Plaintiff]

could have brought that cause of action in her prior action. Accordingly, the claims in her second

. . . complaint are now barred by *res judicata* . . . ."); *L-Tec Elecs. Corp. v. Cougar Elec. Org.,

Inc.,* 198 F.3d 85, 88 (2d Cir. 1999) (concluding that claims were barred by *res judicata* when

Plaintiff's "new claims [were] based on different legal theories rather than different facts and,

accordingly, could have been raised in the original complaint").

These factors have been identified most frequently as controlling the *res judicata* analysis

as to a Plaintiff seeking a "second bite" at the litigation apple. *See Burberry* (pg.5)

There is not one legal claim that VCI brought in this present action that VCI could not

have brought in the earlier March 21, 2011 action against Mr. Salim. It is very probable that

hindsight on the part of VCI is the reason[4] that they brought the present action. Whatever their

---

[4] .    Deily, Mooney & Glastetter, LLP is a highly sophisticated law firm, and who represented

Case 1-13-01442-ess    Doc 32    Filed 07/31/14    Entered 07/31/14 11:56:04

reasons are for bringing this second action they are barred by *res judicata.*

Courts do not approve of piecemeal litigation.[5] Mr. Salim should not have to defend

himself a second time because VCI chose not to bring the claims in the first action. There is

virtually no law that would condone VCI's actions.

The *Restatement (Second) of Judgments* § 24(1) (1982) states that if a valid and final

judgment has been entered on the merits of a case, "the claim extinguished includes all rights of

the Plaintiff to remedies against the defendant with respect to all or any part of the transaction, or

series of connected transactions, out of which the action arose."

Similarly Under both New York law and federal law,

> [T]he doctrine of *res judicata*, or claim preclusion, provides that "a final
> judgment on the merits of an action precludes the parties ... from relitigating
> issues that were or could have been raised in that action.'" *Maharaj v.
> Bankamerica Corp.*, 128 F.3d 94, 97 (2d Cir.1997) (*quoting Federated
> Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398, 101 S.Ct. 2424, 69 L.Ed.2d
> 103 (1981)); *see also Harborside Refrigerated Servs., Inc. v. Vogel*, 959
> F.2d 368, 372 (2d Cir.1992) (explaining that the doctrine of *res judicata*
> "`prevents litigation of a matter that could have been raised and decided in a
> previous suit, whether or not it was raised'" (*quoting Murphy v. Gallagher,
> 761 F.2d 878, 879 (2d Cir.1985)))*.

*Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*, 600 F.3d 190, 95-96 (2nd Cir., 2010).

Virtually every court that has had before it an action in which the Plaintiff had the

opportunity to bring additional causes of action on the same set of facts in the first action has

denied relief to Plaintiffs in their second attempt to find judgment against the same Defendant.

VCI in the District Court actions, and should have known that stating a fraud action against Mr.
Salim would be barred by *res judicata.*

[5]    *See also, Burberry* at page 3. ("Claim preclusion also bars a plaintiff who *prevails in* an
earlier action from bringing new claims, based on the facts of the first action, against the same
defendant or those in privity with the defendant. See Central Hudson Gas & Elec. Corp. v.
Empresa Naviera Santa S.A., 56 F.3d 359, 367-68 (2d Cir. 1995). This principle — that claim
preclusion bars a plaintiff from using successive actions to seek damages arising out of a single
incident from parties known to be in privity with one another — promotes judicial efficiency and
prevents piecemeal litigation, thereby supporting the objectives underlying preclusion doctrine.")

For the reasons that *res judicata* has barred VCI from relitigating an action that has twice been decided by the District Court without any fraud allegation, the Court should deny summary judgment to VCI and dismiss the present action against Mr. Salim.

### A. The Court has the authority, by law to dismiss the Movant, VCI's Summary Judgment motion and *sua sponte* provide Summary Judgment to, Mr. Salim, the Non-Movant.

In the present summary judgment motion, the Movant, VCI in support of their motion have included an Affidavit by Crystal Jeffrey Alexander, the Commercial Credit Senior Manager for VCI, containing six exhibits (fifty-one pages). In addition VCI in their March 14, 2012 Complaint against Mr. Salim attached seven Exhibits. (Attached to Salim Affidavit.) VCI, therefore, has had every opportunity to have placed before two separate Courts the basis for its summary judgment action.

The overwhelming weight of authority supports the conclusion that if one party moves for summary judgment and it appears from all the records, files, affidavits and documents presented that there is no genuine dispute respecting a material fact essential to the proof of movant's case and that the case cannot be proved if a trial should be held, the court may *sua sponte* grant summary judgment to the non-moving party. *Hood River County v. U. S. Dept. of Labor,* 532 F.2d 1236 (9th Cir. 1976); *Dillon v. Antler Land Company of Wyola,* 507 F.2d 940 (9th Cir. 1974); *United States v. Fisher-Otis Company, Inc.,* 496 F.2d 1146 (10th Cir. 1974); *Local 33, Int. Hod Carriers, etc. v. Mason Tenders, etc*., 291 F.2d 496 (2d Cir. 1961); *Case v. International Brotherhood of Electrical Workers*, 438 F.Supp. 856 (D.Alaska, 1977), *aff'd sub nom. Stelling v. International Brotherhood of Electrical Workers*, 587 F.2d 1379 (9th Cir. 1978)[6]

---

[6] .     See also, 6 *Moore's Federal Practice*, § 56.12, n. 6; *Wright and Miller, Federal Practice and Procedure*, § 2720, pp. 467-468, n. 95.

**B. Mr. Salim did not have to bring a cross-motion to have the action against him dismissed because VCI was precluded, by virtue of *res judicata*, from bringing a second action on the same set of facts.**

The *Gospel Missions of America v. City of Los Angeles*, 328 F.3d 548, 553 (9th Cir.,

2003) Court held,

> Even when there has been no cross-motion for summary judgment, a district court may enter summary judgment *sua sponte* against a moving party if the losing party has had a "full and fair opportunity to ventilate the issues involved in the matter." *Cool Fuel, Inc. v. Connett*, 685 F.2d 309, 312 (9th Cir.1982). The salient issues upon which the district court granted summary judgment were presented in the original motion. A fair examination of the record discloses that Gospel Missions had "a full and fair opportunity to ventilate the issues involved." Id. Therefore, the district court did not commit reversible error by acting *sua sponte*.

By law, the Court should enter summary judgment for Mr. Salim, the non-movant, in the

action before the court because VCI's action against Mr. Salim was barred by *res judicata.*

## CONCLUSION

For all the reasons set forth above, Mr. Julian Salim respectfully requests that the Court

deny VCI's application for Summary Judgment and that the Court Dismiss the action by VCI

because of *res judicata.*

Dated: New York, New York
      July 27, 2014

                     Phillip Jaffe and George Bassias
                     *Attorneys for Julian Salim*

                     By:  /s Phillip Jaffe
                          Phillip Jaffe
                          370 East 76th Street
                          New York, NY 10021
                          (212) 734-3535
                          Pjaffe47@gmail.com